The next case for argument is 24-2224, Manufacturing Resources International v. Squires. Mr. Reed, whenever you're ready. May it please the Court. Good morning, Your Honors. David Reed for MRI. The term heat exchanger does not include convective cooling by blowing air over fins. Phillips tells us that the words of a patent claim have the meaning and scope with which they're used in the claims, the specification, and the prosecution history. Here, in the context of these claims, and this specification, and this prosecution history, a heat exchanger is a device with enclosed flow paths, such as channels or tubes, for passing open and closed-loop air through the device. And how do we know this? I'll... I have a question. Just I want some clarification on your proposed construction. You say, on the one hand, a heat exchanger does not include ribs. And then on the other hand, you say a heat exchanger is tubes and channels. And it... Heat or channels. And it might not make a big difference ultimately to the outcome, but which is your claim construction? Are you seeking a negative limitation? Or are you saying that it's channels, includes tubes and channels? Your Honor, the affirmative construction that we've sought is that it be an enclosed... a device with enclosed flow paths for the open and closed-loop flow paths to pass through the heat exchanger. And we've consistently argued throughout below that that does not include fins. Well, I would just say, you know, you should have a claim construction. And the question whether that includes fins is a question of fact, right? I mean, I'm not saying it does include fins, but I just... It's kind of weird to have someone get up, stand up and give two constructions. So, I just want to make sure I knew which one it was. Thank you. Whether or not it includes fins is a question of the scope of the claim term. So, we've consistently argued that as a question of law, the subject of de novo review and not ultimately a question of fact. I think maybe this is a version of the same question. Imagine a system with open and closed, you know, tubes coming into the heat exchanger, coming out of the heat exchanger, but no fins in the heat exchanger. Or there could be fins in the heat exchanger. Imagine the one where there are fins. How does your claim construction deal with the example where there are tubes, input and output, but also fins? Your Honor, we've never argued that the interior structure of the heat exchanger excludes any particular structure. There are many types of configurations you may have in the interior of the heat exchanger to separate the two flow paths that pass through. So, would another way of, I don't know, identifying the relationship between your input tube, output tube idea and the fins idea is that you're saying fins alone cannot be enough? That is correct. Okay. And what is the basis of that? So, it's the claims and the specification and the interplay. So, if we look first at the claims, the claims don't just recite the two words heat exchanger. In claim one of the 740 patent, they recite a common heat exchanger that is located in the pathway of both the open and closed loop. And it further recites fans to force air through, quote, through the common heat exchanger. And then in claim six of the 142 patent, as another example, the claim recites that the heat exchanger forms part of the pathways for the open and closed loop. And so, that provides context. We're not saying that's dispositive, but it provides context for how the heat exchanger is described in the specification. Let me ask you just a little bit of clarification. Are you saying that because the open loop or the closed loop should be enclosed, that that gives the impression that the heat exchanger is also enclosed, as in having a channel or something like that? So, because you have flow paths that pass through the heat exchanger, we read that in the context of these claims and the specification in the prosecution history as requiring enclosed flow paths to pass through. Where is the word enclosed in the claim? The claim does not use the word enclosed, Your Honor. But the claim does recite that the heat exchanger forms part of the flow path of the open and closed loop. It is disputed that the open and closed loop paths are enclosed? So, the board made a finding in the specification, the only disclosure of heat exchanger with enclosed, that the specification only discloses heat exchangers with enclosed channels or tubes. That's at page 32 of the appendix. The only thing, you cite the claim language. I assume, what in the spec are you relying on for your account of what a heat exchanger is? So, Your Honor, this specification is the single best guide for the meaning of a claim term. And here in the background of the patent, the background describes what it calls systems of the past. And it states that in those conventional systems, those prior art systems, heated air is moved into convectively thermal communication with fins. The very next sentence of the background goes on to say that new display applications require even greater cooling capabilities. So, in other words, those conventional systems that blow air into convectively thermal communication with fins was insufficient, and we need more cooling for new applications, outdoor applications. And the specification then goes on to describe the heat exchanger as the improvement over those conventional systems. So, a person of ordinary skill in the art wouldn't understand the heat exchanger that's being described as the invention to encompass the fins, which were what it was improving over. There's no doubt that your specification contemplates and certainly suggests that you want to have these enclosed tubes or channels. There's no doubt about it. Let me tell you about one of the sentences that concerns me. As you say, however, many types of heat exchangers are known and can be used with any of the embodiments herein. And that kind of broad language broadens out what you're talking about. In addition, there is a embodiment, I think it's a last embodiment disclosed, would be the figure four embodiment, talks about using ribs, albeit in a different context. But it does. So those things together, along with language that says things like may be an enclosed tube or channel, make me wonder whether your proposed construction, even in light of the specification, is one that was really intended at the time of writing the specification. So just to unpack that, first I would say the board found that every embodiment of the specification is a heat exchanger that has enclosed channels or tubes. So that was the finding of the board. Nowhere does the patent describe any structure that lacks an enclosed flow path as a heat exchanger. And as I described before, we have this statement in the background describing the systems of the past using fins and goes on to describe the heat exchangers and improvement over that. So under Phillips, we look for what the inventors intended and actually intended to envelop with the claim. And in other words, we look for what the claims most naturally cover. And here in that context, we recognize that there are conventional systems with fins in the background. And then we describe the heat exchangers and improvement over that, exclusively showing that repeated, before I say that, for me. In your embodiment, in your discussion of the preferred embodiment, I think the board cited this. Column 4, 18 through 23, you say, however, many types of heat exchangers are known and can be used with any of the embodiments herein. And I think Judge Stoll cited this. The heat exchanger may be a cross-flow, parallel-flow, or counter-flow heat exchanger. But as the board called out, may doesn't mean must. So wasn't the board correct to kind of cite this provision in the spec as broadening out the definition of heat exchangers? As I stated in the answer to Judge Toronto's question, there are a number of different configurations internally that you can use to configure a heat exchanger. What's common to all of those is the enclosed channels or tubes, as the board found. That's the exclusive disclosure in the specification. And that use of a term repeatedly, consistently, and exclusively can manifest the patentee's intent to so limit the term. That's been the holding of this court in the Erdeto case and subsequent cases. And I would specifically analogize this case to the Abbott diabetes care case that's discussed in the party's briefing. There, the term was electrochemical sensor. And the patent consistently and exclusively depicted that as the sensor that did not have external cables or wires. And then there was a single statement in the background in that case that disparaged sensors that did have the external cables or wires. And this court found, rightly, that the term was limited to sensors without the external wires. And this case is the same. We have repeated, consistent, and exclusive depiction of heat exchangers as devices with flow paths through the device that are enclosed. And the background disparages or says that fins were the systems of the past that were not sufficient. So the most natural reading under Phillips, the most natural reading, is that the inventor here intended the term not to encompass fins, to be an improvement over the use of fins. And I would just turn to also emphasize that the prosecution history is instructive in this regard. We have a chain of provisional applications that the patents claim priority to. The earliest provisional in that chain has a wall with fins that was located between the open and closed loop, that separated the open and closed loop. But nowhere did the provisional describe that structure, that finned wall, as a heat exchanger, because it's not a heat exchanger. The inventors didn't consider that to be a heat exchanger. It was in a later provisional, the 736 provisional, that first described the heat exchanger invention. The title was Heat Exchanger for an Electronic Display. And it expressly, in paragraphs three and five, distinguished from the use of fins. So that further instructs, what did the inventors actually invent here and intend to envelop with the claims? It was not fins. That was the prior art. That was what was conventional. They invented using, instead, a heat exchanger. And we think the claim should be construed accordingly. I see that I'm into my rebuttal time. OK. Thank you. Will we serve it? And let's hear from them.  May it please the court, my name is Fahad Patel with the PTO. I wanted to start with what my friend ended with, where he asked the question, what did the inventor invent in this particular patent that's at issue? And we disagree that the invention is the heat exchanger. The specification does not say that the heat exchanger here is inventive or unique. The invention is very different here. The issue in the prior art was that outdoor displays got hot because they were in the sun. And so when the sun shines down on an outdoor display, it heats up the front of the display. And that heat can cause problems. And so what the invention was about was having two loops for cooling the display. So there was a closed loop that would circulate gas around the display, pick up the heat from the front of the display, and then move that to a heat exchanger, where a second loop would blow that heat out of the compartment. So that's the point of the invention. It's the heat from the sun that gets picked up. It's not about the heat exchanger. And in fact, the specification, as the court noted in column 4, explicitly states, and I'll just go back to this language because it's really critical here. It says, many types of heat exchangers are known. That's a general statement about heat exchangers being known in the art. They are undisputed that one type of heat exchanger in the prior art, at least, or somewhere, is a rib, right? A rib can be a heat exchanger. Yes, it is. That's undisputed. I think the argument here is that they're contending that they've used the word in the claim in a different way, right? I think that there are, I agree, Your Honor, that it is undisputed that in the art, a heat exchanger could include a fin and is broadly used. In fact, the other side admitted that multiple times in the underlying proceeding, that the ordinary use of the term heat exchanger is very broad. So the problem here maybe is that they shouldn't have used the word heat exchanger in their claim and they should have said cross-flow, all those other words that are in the specific embodiments in the claims, right? I mean, in the fin specification, right?  We agree with that. Can you respond? Along these same lines, your friend, I think, twice cited language in the background section of the patent talking about just any, I think he characterized them as disparaging the use of fins. So I think you responded to that. You're brief, but if you could just reiterate. Yeah, happy to, and we're now at appendix 237, which is the background. And this is the bottom of column one, top of column two. Exactly, bottom of column one, top of column two. And again, the issue with the prior art systems, and actually it's really set forth in column two, beginning at lines, I guess, nine or 10, where it says, in particular, cooling devices for electronic displays of the past have generally used convective heat dissipation systems that function to cool only the rear interior portion of the display. By itself, this is not adequate in many climates, especially when radiative heat transfer from the sun through a display window becomes a major factor. So this is what I started out my argument talking about. The prior art systems were cooling the back, the back part of the housing, whereas the problem that this inventor encountered was heat that was in the front of the display from the sun. And so the invention was how to get rid of the heat that's in the front. And it had nothing to do with fins in particular. There's no problems identified. Let me just see if I'm understanding. So at the bottom of column one, it says conductive and convective heat transfer systems for displays generally attempt to remove heat from the electronic components through the sidewalls. Next sentence, in order to do this, the systems of the past have relied primarily on fans for moving internal air or ingested ambient air within the housing past the components to be cooled and out of the display. And then it says to those that it says sometimes you do that by putting them through fins. And you're saying this invention is about air that is too hot and that's not yet interior. And so you've got to move it somehow from the front out the back. Exactly, using heat transfer. So whatever else, I mean, just to put it back in the, what, Edetto or whatever that case is. Edetto, yeah. Oh, the COVID case also. That's not a disparagement of using fins in a process for moving hot front air. Exactly right. Exactly right. Yes, Your Honor. I also, we didn't talk about this, but we do have what we think is a strong forfeiture argument in this case on claim construction. And we had a table in our green brief that is on page 29, where we put the two constructions side by side. On the left was MRI's construction to the board. On the right is MRI's construction to this court. And these two constructions are significantly different. Your friend kind of responded to that, at least briefly, by saying, this is what we pressed all along, the deal with fins. And I haven't read the entire record and every word of it, but I have no reason to doubt him. Do you have a disagreement with his take on what happened before the board in that this is clearly their argument that included the exclusion of fins? Yeah, very much so. Very much disagree. We believe that their argument has shifted in a meaningful way, and it deprived the board of an opportunity to consider the argument that they're pushing forth now. And if you look at the two constructions, at the end of the day, it is MRI's obligation to tee up a dispute to the board. And the board then responds to the dispute that's presented to it. Well, it's kind of an admission on your part that we can't affirm the board's decision because it didn't deal with the right issue. The board dealt with the issue that was before it. It was the correct issue that was in front of the board. What the board focused on was the language enclosed channels or tubes. And that's in the board's decision. We can go through that. What if one read, so I'm looking at your little chart on page 29 of your brief, where you say devices, this is the construction on appeal, devices with enclosed flow paths for passing open and closed loop air through the device. That's basically the same as what's on the other side. And not to include using fans to move air into convectively thermal communication with fins. Suppose one read that last piece, and I know I'd be adding words here, but I think Mr. Reed seemed, I don't know, agreeable to the words. Not using only fans to move air into convectively thermal communication with fins. So that it's still all about having enclosed paths on the front and the back. And this and not is really meant to say and doing this other thing without doing the first thing. Then it's not really a material difference. I think they would be closer in that case, but the construction to the board doesn't say anything about fins at all. It doesn't say not fins. And the other difference is that theoretically there is something different between channels or tubes versus flow paths. I don't know what that difference might or might not be. It hasn't been developed before the board, but I don't know how the board would have seen the prior art reference, for example, under a broader term like flow paths as opposed to enclosed channels or tubes. You know, the board focused on the dispute that was before it, the language enclosed channels or tubes, and they rejected that as being within the scope of heat exchanger. Now, if the claim instead that the construction was flow paths, I don't know, perhaps they would have found that the prior art had a flow path. If there are no other questions for the court? No. Thank you. Thank you. Your Honors, I'd like to start where my friend did with his disagreement that the invention was the heat exchanger. And it sounded to me like an attempt to read the heat exchanger out of the invention. But if you look at the summary... That's not what he was saying. He was saying that the key contribution of this invention is to do something about the hot air at the front. So, the way that the invention... Take it and put it through a heat exchanger. The way... So, it's not just anything that exchanges heat. The way this invention works is to more effectively remove the heat from that closed loop that passes in front of the display to the open loop. And we know from the background that the convective... that the heat exchanger was key to that and that the convective use of fins was not sufficient because that's what the background tells us. So, my friend is arguing that the claim covers convectively thermal communication with fins, but that's an unnatural reading. That's not what a person of ordinary skill in the art would understand from how it's described in the specification. Turning briefly to the forfeiture argument, the argument that the claims do not cover fins, that they should not be construed to cover fins, was argued repeatedly throughout the decision below. That's why the final written decision at pages 26 and 31 addressed that point in those arguments. It was argued in the patent owner response, page 956 of the appendix. It's argued in the SIR reply at 1088 to 89 of the appendix. It came up in the oral hearing as we've described in the gray brief at pages 5 to 6. So, that argument is simply misplaced. It was a key dispute during the entirety of the proceedings below. Anything further? There are no further questions. Thank you, Your Honors. We thank both sides and the case is submitted.